**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
———————————————————— x

Frank Pompilio, individually and on                    :
behalf of all others similarly situated,               :
                                                        :
                                                        :    Case No. 7:24-cv-08220-PMH
            Plaintiff,                                 :
v.                                                      :
                                                        :
                                                        :    **AMENDED CLASS ACTION COMPLAINT**
Boar's Head Provisions Co. Inc.,                       :
                                                        :    <u>**JURY TRIAL DEMANDED**</u>
            Defendant.                                 :
                                                        :
                                                        :
                                                        :
———————————————————— x

Plaintiff, Frank Pompilio (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.      This action seeks to remedy the deceptive and misleading business practices of Boar's Head Provisions Co. Inc. (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Boar's Head Brand Products throughout the state of New York and throughout the United States (hereinafter the "Products"):

| CATEGORY | PRODUCT NAME | PURCHASED-BY DATES |
|---|---|---|
| Ham | All Natural Applewood Smoked Uncured Ham | All product purchased before 7/31/24 |
| Ham | All Natural Traditional Uncured Ham | All product purchased before 7/31/24 |

1

| Ham | BourbonRidge Uncured Smoked Ham | All product purchased before 7/31/24 |
|---|---|---|
| Ham | Brown Sugar & Spice Off the Bone Ham | All product purchased before 7/31/24 |
| Ham | Gourmet Pepper Brand Ham | All product purchased before 7/31/24 |
| Ham | Hickory Smoked Roast Uncured Ham | All product purchased before 7/31/24 |
| Ham | Italian Cappy Ham | All product purchased before 7/31/24 |
| Ham | Hot Italian Cappy Style Ham | All product purchased before 7/31/24 |
| Ham | Extra Hot Italian Cappy Style Ham | All product purchased before 7/31/24 |
| Ham | Maple Glazed Roast Pork Loin | All product purchased before 7/31/24 |
| Ham | Peppenero Garlic Ham | All product purchased before 7/31/24 |
| Ham | Porchetta Roasted Seasoned Pork (Foodservice) | All product purchased before 7/31/24 |
| Ham | Roasted Pork | All product purchased before 7/31/24 |
| Ham | Rosemary & Sundried Tomato Ham | All product purchased before 7/31/24 |
| Ham | SmokeMaster Beechwood Smoked Ham | All product purchased before 7/31/24 |
| Ham | Sweet Slice Smoked Uncured Ham | All product purchased before 7/31/24 |
| Ham | Tavern Ham | All product purchased before 7/31/24 |

| | | |
|---|---|---|
| Ham | Virginia Ham | All product purchased before 7/31/24 |
| Bologna | Pork & Beef Bologna | All product purchased before 7/31/24 |
| Bologna | 33% Lower Sodium Bologna | All product purchased before 7/31/24 |
| Bologna | Beef Bologna | All product purchased before 7/31/24 |
| Bologna | Beef Salami | All product purchased before 7/31/24 |
| Bologna | Garlic Bologna | All product purchased before 7/31/24 |
| Bologna | Head Cheese | All product purchased before 7/31/24 |
| Bologna | Strassburger Brand Liverwurst | All product purchased before 7/31/24 |
| Bologna | Liverwurst Pate | All product purchased before 7/31/24 |
| Bologna | Olive Terrine Loaf | All product purchased before 7/31/24 |
| Bologna | Pickle & Pepper Terrine Loaf | All product purchased before 7/31/24 |
| Bologna | Spiced Ham | All product purchased before 7/31/24 |
| Bacon | Canadian Style Uncured Bacon | All product purchased before 7/31/24 |
| Bacon | Steakhouse Roasted Slab Bacon | All product purchased before 7/31/24 |
| Frankfurters | Uncured Pork & Beef Frankfurters | All product purchased before 7/31/24 |

| Frankfurters | Uncured Pork & Beef Frankfurters - Natural Casing | All product purchased before 7/31/24 |
|---|---|---|
| Frankfurters | Uncured Beef Frankfurters | All product purchased before 7/31/24 |
| Frankfurters | Uncured Beef Frankfurters- Natural Casing | All product purchased before 7/31/24 |
| Frankfurters | Uncured Cocktail Frankfurters | All product purchased before 7/31/24 |
| Frankfurters | Uncured Beef Knockwurst | All product purchased before 7/31/24 |
| Sausage | Bratwurst | All product purchased before 7/31/24 |
| Sausage | Hot Smoked Uncured Sausage | All product purchased before 7/31/24 |
| Sausage | Uncured Kielbasa | All product purchased before 7/31/24 |
| Sausage | All Natural Chicken Sausage - Smoked Andouille | All product purchased before 7/31/24 |
| Old Country | Old Country Brand All Nat Uncured Smoked Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand All Natural Uncured Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Beechwood Smoked Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand BourbonRidge Smoked Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Brown Sugar & Spice Delight Off the Bone Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Cappy Brand Ham | All product received before 7/31/24 |

| Old Country | Old Country Brand Gourmet Pepper Ham | All product received before 7/31/24 |
|---|---|---|
| Old Country | Old Country Brand Habanero Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Rosemary Tomato Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Black Forest Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Canadian Style Bacon | All product received before 7/31/24 |
| Old Country | Old Country Brand Cappy Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Hot Butt Cappy Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Seasoned Fresh Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Sweet Slice Smoked Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Tavern Ham | All product received before 7/31/24 |

2.      Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that the Products are contaminated with Listeria monocytogenes.

3.      As described in further detail below, the Products contain *Listeria monocytogenes*, which could lead to serious and life-threatening adverse health consequences.[1]   The risk of serious

---

[1] *Listeria monocytogenes* is an organism which can cause serious and sometimes fatal infections in young children, frail or elderly people, and others with weakened immune systems.  Although healthy individuals may suffer only short-term symptoms such as high fever, severe headache, stiffness, nausea, abdominal pain and diarrhea, listeria

infection is particularly concerning for pregnant mothers, infants, the elderly, and immunocompromised individuals, who are highly susceptible to severe infection and even death from *Listeria monocytogenes*.[2]

4.    *Listeria monocytogenes* is responsible for causing the infection Listeria. Foodborne listeriosis is recognized to be one of the most dangerous and life-threatening foodborne diseases.[3]  High-risk groups for Listeria include pregnant women, infants, elderly, and immune compromised individuals, who have an elevated risk of developing severe symptoms, including death (the mortality rate is 20%-30%), making this bacteria a significant public health concern.[4]

5.    Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from known harmful substances, including *Listeria monocytogenes*.

6.    Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the meat products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and even be life threatening.

7.    Unfortunately for consumers, like Plaintiff, the meat Products they purchased contain *Listeria monocytogenes*.

8.    Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain *Listeria monocytogenes*. Knowing of the presence of *Listeria monocytogenes* is material to reasonable consumers.  The presence of *Listeria monocytogenes* was solely within the possession of Defendant, and consumers could only obtain such information by conducting by sending the products off to a laboratory for extensive testing. This omission leads a

---

infection can cause miscarriages and stillbirths among pregnant women.  *See*:
https://www.cnn.com/2024/07/30/health/boars-head-recall-listeria/index.html
[2] *Id.*
[3] https://www.who.int/news-room/fact-sheets/detail/listeriosis
[4] *Id.*

reasonable consumer to believe they are not purchasing a product with a known bacterium when in fact they are purchasing a product contaminated with *Listeria monocytogenes*.

9.      *Listeria monocytogenes* is a species of pathogenic (disease-causing) bacteria, that causes the disease Listeria.  It is able to survive and even grow under refrigeration and other food preservation measures, making it a resilient and dangerous bacteria.[5]  As a matter of fact, the bacteria is also able to survive freezing, such as the similar storage temperature of Defendant's meat products.[6]

10.     Furthermore, the types of infection issues *Listeria monocytogenes* can cause include but is not limited to sepsis, meningitis, encephalitis, spontaneous abortion, or fever and even a healthy adult is susceptible to infection issues including gastroenteritis.[7]  Moreover, infection causes a 95% hospitalization rate and has a high case fatality rate of 20%, making *Listeria monocytogenes* infection quite dangerous.[8]  In addition, studies have concluded that Listeriosis is associated with high early post-recovery mortality, further exacerbating the danger and difficulty of treating the infection even with early recovery.[9]

11.     A representative example of Defendant's lack of disclosure on the Products is depicted below:

---

[5] https://www.fda.gov/food/foodborne-pathogens/listeria-listeriosis
[6] https://www.mayoclinic.org/diseases-conditions/listeria-infection/symptoms-causes/syc-20355269
[7] https://www.ncbi.nlm.nih.gov/books/NBK534838/
[8] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5736668/
[9] https://link.springer.com/article/10.1007/s15010-022-01872-1



12.    Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including Listeria monocytogenes.

13.    Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the food products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

14.    Unfortunately for consumers, like Plaintiff, the food Products they purchased contained, or were at risk of containing, Listeria monocytogenes.

15.    Defendant's own recall and other testing confirmed and demonstrated the presence of Listeria monocytogenes in the Plaintiff's product.

**Defendant's Recall is Insufficient**

16.    Defendant issued a recall of its Products on July 25, 2024.[10]

17.    To be eligible for a refund, a consumer must retain the Products. "**Consumers are advised to discard any recalled products listed below or return them to the store where**

---

[10] https://boarshead.com/pages/2024-07-30-july-2024-product-recall

**purchased for a full refund**."[11]  This recall was deliberately designed to preclude the vast majority of consumers from receiving a recall.

18.     Defendant is well aware that any consumer who was made aware of the recall would be predisposed to throwing the Products away.  Defendant is also aware that consumers shop in multiple locations and may or may not purchase the Products at the same location each time.  Also, most consumers do not maintain receipts and therefore cannot obtain a refund at the purchase location for the recalled Products.

19.     Accordingly, Defendant's recall is designed to reach very few people and designed to benefit very few of the consumers who purchased the Products.

20.     The class action remedy is superior to Defendant's failed recall in every conceivable fashion.

21.     Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain Listeria monocytogenes.  This omission leads a reasonable consumer to believe they are not purchasing a product that contains Listeria monocytogenes when in fact they are purchasing a product contaminated with Listeria monocytogenes.

22.     Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves.  As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing products that are safe for oral ingestion and do not contain any harmful ingredients.  Indeed, consumers expect the packaging and labels to accurately disclose the presence of such bacteria within the Products.  Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, Listeria monocytogenes.

---

[11] *Id*.

23.     Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, Listeria monocytogenes, which is dangerous to one's health and well-being.  Nevertheless, Defendant does not list or mention Listeria monocytogenes anywhere on the Products' packaging or labeling.

24.     Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products was material to Plaintiff and Class Members Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a food product contaminated with Listeria monocytogenes that is harmful to consumers' health.

25.     That is because Defendant's Products containing, or at risk of containing *Listeria monocytogenes*, have no value, or at the very least, Defendant was able to charge significantly more for the Products than they would have had they not omitted the fact that the Products contain—or possibly contain--*Listeria monocytogenes*.

26.     As set forth below, food products, such as Defendant's Products, are in no way safe for human consumption and are entirely worthless.

27.     Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels.  Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

28.     Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendant also breached and continues to breach its warranties regarding the Products.

10

29.     Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

30.     Defendant manufactures, markets, advertises, and sells food products.

31.     Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest.  Companies, such as Defendant, have capitalized on consumers' desire for food products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

32.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as Listeria monocytogenes, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

33.     The Products' packaging does not identify Listeria monocytogenes.  Indeed, Listeria monocytogenes is not listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of Listeria monocytogenes in the Products.  This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, Listeria monocytogenes.

34.     However, the Products contain, or are at risk of containing, Listeria monocytogenes.

35.     Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing food products for many years, including producing and manufacturing the contaminated Products.

11

36.     Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of Listeria monocytogenes contamination, as well as the ability to test the Products for Listeria monocytogenes contamination prior to releasing the Products into the stream of commerce. Such knowledge is solely within the possession of Defendant.

37.     Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products.  Such knowledge is not readily available to consumers like Plaintiff and Class Members.

38.     Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

39.     Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing Listeria monocytogenes is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

40.     Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they orally ingest.  Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Products' labels, and the listed ingredients.  Defendant knows that if they had not omitted that the Products contained Listeria monocytogenes, then Plaintiff and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products..

41.     Consumers rely on marketing and information in making purchasing decisions.

42.     By omitting that the Products include Listeria monocytogenes on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contained Listeria monocytogenes.

43.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

44.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

45.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without Listeria monocytogenes over comparable products not so marketed.

46.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

a.     Paid a sum of money for Products that were not what Defendant represented;

b.     Paid a premium price for Products that were not what Defendant represented;

c.     Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted;

d.     Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

e.     Were denied the benefit of the properties of the Products Defendant promised.

47.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiff and the Class Members would not have been willing to purchase the Products.

48.     Plaintiff and the Class Members paid for Products that do not contain Listeria monocytogenes.  Since the Products do indeed or possibly contain Listeria monocytogenes, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

49.     Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

50.     Plaintiff and Class Members saw the Products' packaging prior to purchasing the Products.  Had Plaintiff and Class Members known the truth about the Products, i.e., that they do or possibly contain Listeria monocytogenes, they would not have been willing to purchase them at any price, or, at minimum would have paid less for them.

## JURISDICTION AND VENUE

51.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York, and Defendant Boar's Head Provisions Co. Inc. is a citizen

of Florida; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

52.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

53.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

<u>**PARTIES**</u>

<u>**Plaintiff**</u>

54.     Plaintiff is a citizen and resident of Dutchess County, New York. During the applicable statute of limitations period, Plaintiff purchased and used Defendant's Products that contained *Listeria monocytogenes*, including Products that were subject to the recall. More specifically, during the class period Plaintiff purchased Boar's Products at a Stop & Shop store in Poughkeepsie, New York. Prior to purchasing the Product, Plaintiff saw the packaging of the Product.

55.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products. The Products Plaintiff received were worthless because they possibly contained Listeria monocytogenes. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured

15

in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

56.    Defendant, Boar's Head Provisions Co. Inc., is a Florida company with its principal place of business in Sarasota, Florida.

57.    Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## CLASS ALLEGATIONS

58.    Plaintiff brings this matter on behalf of himself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

59.    The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

60.    Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

61.    The Class and New York Subclass are referred to collectively throughout the Complaint as the Class.

62.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

63.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

64.    <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.    Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d.    Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e.    Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

65.    <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

66.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

67.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

68.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

   d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

   e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

   f. This class action will assure uniformity of decisions among Class Members;

   g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

   h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

   i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

69. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**<u>CLAIMS</u>**

**<u>FIRST CAUSE OF ACTION</u>**
**<u>VIOLATION OF NEW YORK GBL § 349</u>**
**(On Behalf of Plaintiff and New York Subclass Members)**

70. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

19

71.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . .."

72.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

73.     There is no adequate remedy at law.

74.     Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

75.     Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have Listeria monocytogenes —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have.  Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

76.     Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

77.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

78.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

79.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

80.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

81.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

82.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

83.     Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe for use and doesn't list that the Products contain Listeria monocytogenes.

84.     Plaintiff and the New York Subclass Members have been injured inasmuch as they saw the labeling, packaging, and advertising and purchased Products that were mislabeled,

unhealthy, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

85. Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

86. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

87. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

88. Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

89. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

90. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Declaring that Defendant is financially responsible for notifying the Class members of the

pendency of this suit;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: October 31, 2024

Respectfully submitted,

**SULTZER & LIPARI, PLLC**

By:    /s/ Jason P. Sultzer
Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*