**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------- x

Frank Pompilio, Rita Torres, Samantha Chuskas, :
Sherly Gattof, and Robby Harper, individually and :
on behalf of all others similarly situated, :
                                    :
        Plaintiffs, :
v. :
  :
  :
Boar's Head Provisions Co. Inc., :
  :
        Defendant. :
  :
  :

Case No. 7:24-cv-08220

Hon. Philip M. Halpern

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

--------------------------------------------------------------- x

      Plaintiffs, Frank Pompilio, Rita Torres, Samantha Chuskas, Sherly Gattof, and Robby Harper (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

**NATURE OF THE ACTION**

      1.    This action seeks to remedy the tortious and deceptive and misleading business practices of Boar's Head Provisions Co. Inc. (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Boar's Head Brand Products throughout the state of New York, California, and Illinois, and throughout the United States (hereinafter the "Products"):

| CATEGORY | PRODUCT NAME | PURCHASED-BY DATES |
|---|---|---|
| Ham | All Natural Applewood Smoked Uncured Ham | All product purchased before 7/31/24 |

| Ham | All Natural Traditional Uncured Ham | All product purchased before 7/31/24 |
|---|---|---|
| Ham | BourbonRidge Uncured Smoked Ham | All product purchased before 7/31/24 |
| Ham | Brown Sugar & Spice Off the Bone Ham | All product purchased before 7/31/24 |
| Ham | Gourmet Pepper Brand Ham | All product purchased before 7/31/24 |
| Ham | Hickory Smoked Roast Uncured Ham | All product purchased before 7/31/24 |
| Ham | Italian Cappy Ham | All product purchased before 7/31/24 |
| Ham | Hot Italian Cappy Style Ham | All product purchased before 7/31/24 |
| Ham | Extra Hot Italian Cappy Style Ham | All product purchased before 7/31/24 |
| Ham | Maple Glazed Roast Pork Loin | All product purchased before 7/31/24 |
| Ham | Peppenero Garlic Ham | All product purchased before 7/31/24 |
| Ham | Porchetta Roasted Seasoned Pork (Foodservice) | All product purchased before 7/31/24 |
| Ham | Roasted Pork | All product purchased before 7/31/24 |
| Ham | Rosemary & Sundried Tomato Ham | All product purchased before 7/31/24 |
| Ham | SmokeMaster Beechwood Smoked Ham | All product purchased before 7/31/24 |
| Ham | Sweet Slice Smoked Uncured Ham | All product purchased before 7/31/24 |
| Ham | Tavern Ham | All product purchased before 7/31/24 |

| Ham | Virginia Ham | All product purchased before 7/31/24 |
|---|---|---|
| Bologna | Pork & Beef Bologna | All product purchased before 7/31/24 |
| Bologna | 33% Lower Sodium Bologna | All product purchased before 7/31/24 |
| Bologna | Beef Bologna | All product purchased before 7/31/24 |
| Bologna | Beef Salami | All product purchased before 7/31/24 |
| Bologna | Garlic Bologna | All product purchased before 7/31/24 |
| Bologna | Head Cheese | All product purchased before 7/31/24 |
| Bologna | Strassburger Brand Liverwurst | All product purchased before 7/31/24 |
| Bologna | Liverwurst Pate | All product purchased before 7/31/24 |
| Bologna | Olive Terrine Loaf | All product purchased before 7/31/24 |
| Bologna | Pickle & Pepper Terrine Loaf | All product purchased before 7/31/24 |
| Bologna | Spiced Ham | All product purchased before 7/31/24 |
| Bacon | Canadian Style Uncured Bacon | All product purchased before 7/31/24 |
| Bacon | Steakhouse Roasted Slab Bacon | All product purchased before 7/31/24 |
| Frankfurters | Uncured Pork & Beef Frankfurters | All product purchased before 7/31/24 |
| Frankfurters | Uncured Pork & Beef Frankfurters - Natural Casing | All product purchased before 7/31/24 |

| Frankfurters | Uncured Beef Frankfurters | All product purchased before 7/31/24 |
|---|---|---|
| Frankfurters | Uncured Beef Frankfurters- Natural Casing | All product purchased before 7/31/24 |
| Frankfurters | Uncured Cocktail Frankfurters | All product purchased before 7/31/24 |
| Frankfurters | Uncured Beef Knockwurst | All product purchased before 7/31/24 |
| Sausage | Bratwurst | All product purchased before 7/31/24 |
| Sausage | Hot Smoked Uncured Sausage | All product purchased before 7/31/24 |
| Sausage | Uncured Kielbasa | All product purchased before 7/31/24 |
| Sausage | All Natural Chicken Sausage - Smoked Andouille | All product purchased before 7/31/24 |
| Old Country | Old Country Brand All Nat Uncured Smoked Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand All Natural Uncured Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Beechwood Smoked Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand BourbonRidge Smoked Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Brown Sugar & Spice Delight Off the Bone Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Cappy Brand Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Gourmet Pepper Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Habanero Ham | All product received before 7/31/24 |

| Old Country | Old Country Brand Rosemary Tomato Ham | All product received before 7/31/24 |
|---|---|---|
| Old Country | Old Country Brand Black Forest Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Canadian Style Bacon | All product received before 7/31/24 |
| Old Country | Old Country Brand Cappy Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Hot Butt Cappy Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Seasoned Fresh Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Sweet Slice Smoked Ham | All product received before 7/31/24 |
| Old Country | Old Country Brand Tavern Ham | All product received before 7/31/24 |

2.      Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiffs, by omitting and not disclosing to consumers on its packaging that the Products are contaminated with Listeria monocytogenes.

3.      As described in further detail below, the Products contain *Listeria monocytogenes*, which could lead to serious and life-threatening adverse health consequences.[1]   The risk of serious infection is particularly concerning for pregnant mothers, infants, the elderly, and immunocompromised individuals, who are highly susceptible to severe infection and even death from *Listeria monocytogenes*.[2]

---

[1] *Listeria monocytogenes* is an organism which can cause serious and sometimes fatal infections in young children, frail or elderly people, and others with weakened immune systems.  Although healthy individuals may suffer only short-term symptoms such as high fever, severe headache, stiffness, nausea, abdominal pain and diarrhea, listeria infection can cause miscarriages and stillbirths among pregnant women.  *See*: https://www.cnn.com/2024/07/30/health/boars-head-recall-listeria/index.html
[2] *Id.*

4.      *Listeria monocytogenes* is responsible for causing the infection Listeria.  Foodborne listeriosis is recognized to be one of the most dangerous and life-threatening foodborne diseases.[3] High-risk groups for Listeria include pregnant women, infants, elderly, and immune compromised individuals, who have an elevated risk of developing severe symptoms, including death (the mortality rate is 20%-30%), making this bacteria a significant public health concern.[4]

5.      Consumers like the Plaintiffs trust manufacturers such as Defendant to sell products that are safe and free from known harmful substances, including *Listeria monocytogenes*.

6.      Plaintiffs and those similarly situated (hereinafter "Class Members") certainly expect that the meat products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and even be life threatening.

7.      Unfortunately for consumers, like Plaintiffs, the meat Products they purchased contain or were at the risk of containing *Listeria monocytogenes*.

8.      Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain or were at the risk of containing *Listeria monocytogenes*. Knowing that the Products contain or were at the risk of containing *Listeria monocytogenes* is material to reasonable consumers.  The risk and presence of *Listeria monocytogenes* was solely within the possession of Defendant, and consumers could only obtain such information by conducting by sending the products off to a laboratory for extensive testing. This omission leads a reasonable consumer to believe they are not purchasing a product containing or at risk of containing a known bacterium when in fact they are purchasing a product contaminated with or at risk of being contaminated with *Listeria monocytogenes*.

9.      *Listeria monocytogenes* is a species of pathogenic (disease-causing) bacteria, that causes the disease Listeria.  It is able to survive and even grow under refrigeration and other food

---

[3] https://www.who.int/news-room/fact-sheets/detail/listeriosis
[4] *Id.*

preservation measures, making it a resilient and dangerous bacteria.[5]  As a matter of fact, the bacteria is also able to survive freezing, such as the similar storage temperature of Defendant's meat products.[6]

10.    Furthermore, the types of infection issues *Listeria monocytogenes* can cause include but is not limited to sepsis, meningitis, encephalitis, spontaneous abortion, or fever and even a healthy adult is susceptible to infection issues including gastroenteritis.[7]  Moreover, infection causes a 95% hospitalization rate and has a high case fatality rate of 20%, making *Listeria monocytogenes* infection quite dangerous.[8]  In addition, studies have concluded that Listeriosis is associated with high early post-recovery mortality, further exacerbating the danger and difficulty of treating the infection even with early recovery.[9]

11.    A representative example of Defendant's lack of disclosure on the Products is depicted below:

---

[5] https://www.fda.gov/food/foodborne-pathogens/listeria-listeriosis
[6] https://www.mayoclinic.org/diseases-conditions/listeria-infection/symptoms-causes/syc-20355269
[7] https://www.ncbi.nlm.nih.gov/books/NBK534838/
[8] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5736668/
[9] https://link.springer.com/article/10.1007/s15010-022-01872-1



12.    Consumers like the Plaintiffs trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including Listeria monocytogenes.

13.    Plaintiffs and those similarly situated (hereinafter "Class Members") certainly expect that the food products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

14.    Unfortunately for consumers, like Plaintiffs, the food Products they purchased contained, or were at risk of containing, Listeria monocytogenes.

15.    Defendant's own recall and other testing confirmed and demonstrated the presence of Listeria monocytogenes in the Plaintiffs' products.

**Defendant's Recall is Insufficient**

16.    Defendant issued a recall of its Products on July 25, 2024.[10]

17.     To be eligible for a refund, a consumer must retain the Products.  "**Consumers are advised to discard any recalled products listed below or return them to the store where purchased for a full refund**."[11]  This recall was deliberately designed to preclude the vast majority

---

[10] https://boarshead.com/pages/2024-07-30-july-2024-product-recall
[11] *Id.*

of consumers from receiving a refund from the recall.

18.     Defendant is well aware that any consumer who was made aware of the recall would be predisposed to throwing the Products away. Defendant is also aware that consumers shop in multiple locations and may or may not purchase the Products at the same location each time. Also, most consumers do not maintain receipts and therefore cannot obtain a refund at the purchase location for the recalled Products.

19.     Accordingly, Defendant's recall is designed to reach very few people and designed to benefit very few of the consumers who purchased the Products.

20.     The class action remedy is superior to Defendant's failed recall in every conceivable fashion.

21.     Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain or at the risk of containing Listeria monocytogenes. This omission leads a reasonable consumer to believe they are not purchasing a product that contains, or at the risk of containing Listeria monocytogenes when in fact they are purchasing a product contaminated, or at the risk of being contaminated with Listeria monocytogenes.

22.     Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves. As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing products that are safe for oral ingestion and do not contain, or at the risk of containing any harmful ingredients. Indeed, consumers expect the packaging and labels to accurately disclose the presence and risk of presence of such bacteria within the Products. Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, Listeria monocytogenes.

23.     Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, Listeria monocytogenes, which is dangerous to

one's health and well-being.   Nevertheless, Defendant does not list or mention Listeria monocytogenes anywhere on the Products' packaging or labeling.

24.    Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products was material to Plaintiffs and Class Members Consequently, Plaintiffs and Class Members lost the entire benefit of their bargain when what they received was a food product contaminated or at the risk of being contaminated with Listeria monocytogenes that is harmful to consumers' health.

25.    That is because Defendant's Products containing, or at risk of containing *Listeria monocytogenes*, have no value, or at the very least, Defendant was able to charge significantly more for the Products than they would have had they not omitted the fact that the Products contain—or possibly contain--*Listeria monocytogenes*.

26.    As set forth below, food products, such as Defendant's Products, are in no way safe for human consumption and are entirely worthless.

27.    Alternatively, Plaintiffs and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels.  Given that Plaintiff and Class Members paid a premium for the Products, Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

28.    Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

29.    Defendant manufactures, markets, advertises, and sells food products.

30.    Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest.  Companies, such as Defendant, have capitalized on consumers'

desire for safe and heathy food products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

31.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as Listeria monocytogenes, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

32.     The Products' packaging does not identify Listeria monocytogenes.  Indeed, Listeria monocytogenes is not listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of Listeria monocytogenes in the Products.  This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, Listeria monocytogenes.

33.     However, the Products contain, or are at risk of containing, Listeria monocytogenes.

34.     Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing food products for many years, including producing and manufacturing the contaminated Products.

35.     Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of Listeria monocytogenes contamination, as well as the ability to test the Products for Listeria monocytogenes contamination prior to releasing the Products into the stream of commerce. Such knowledge is solely within the possession of Defendant.

36.     Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products.  Such knowledge is not readily available to consumers like Plaintiffs and Class Members.

11

37.    Defendant has a duty to provide consumers, like Plaintiffs and Class Members, with accurate information about the contents of the Products.

38.    Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing or at the risk of containing Listeria monocytogenes is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiffs and the Class Members about the contents and safety of the Products.

39.    Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they orally ingest.  Consumers such as Plaintiffs and the Class Members are influenced by the marketing and advertising campaign, the Products' labels, and the listed ingredients.  Defendant knows that if they had not omitted that the Products contained or were risk of containing  Listeria monocytogenes, then Plaintiffs and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products..

40.    Consumers rely on marketing and information in making purchasing decisions.

41.    By omitting that the Products include or at the risk of including Listeria monocytogenes on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contained or were ate the risk of containing Listeria monocytogenes.

42.    Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

43.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class Members.

44.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without Listeria monocytogenes over comparable products not so marketed.

45.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiffs and the Class Members in that they:

a.    Paid a sum of money for Products that were not what Defendant represented;

b.    Paid a premium price for Products that were not what Defendant represented;

c.    Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted;

d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

e.    Were denied the benefit of the properties of the Products Defendant promised.

46.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiffs and the Class Members would not have been willing to purchase the Products.

47.    Plaintiffs and the Class Members paid for Products that do not contain Listeria monocytogenes.  Since the Products do indeed or possibly contain Listeria monocytogenes, the Products Plaintiffs and the Class Members received were worth less than the Products for which they paid.

48.    Plaintiffs and the Class Members all paid money for the Products; however, Plaintiffs and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiffs and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.

Consequently, Plaintiffs and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

49.    Plaintiffs and Class Members saw the Products' packaging prior to purchasing the Products.  Had Plaintiffs and Class Members known the truth about the Products, i.e., that they do or possibly contain Listeria monocytogenes, they would not have been willing to purchase them at any price, or, at minimum would have paid less for them.

## JURISDICTION AND VENUE

50.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiffs Pompilio and Torres are citizens of New York, Plaintiffs Gatoff and Harper are citizens of California, Plaintiff Chaskas is a citizen of Illinois,  and Defendant Boar's Head Provisions Co. Inc. is a citizen of Florida; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

51.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

52.    Venue is proper because Plaintiffs Torrs and Pompilio and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff Pompilio

53.    Plaintiff Pompilio is a citizen and resident of Dutchess County, New York.  During the applicable statute of limitations period, Plaintiff purchased and used Defendant's Products that possibly contained *Listeria monocytogenes*, including Products that were subject to the warning. More specifically, during the class period Plaintiff purchased Boar's Products at a Stop & Shop store

in Poughkeepsie, New York. Prior to purchasing the Product, Plaintiff saw the packaging of the Product.

54.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products. The Products Plaintiff received were worthless because they possibly contained Listeria monocytogenes. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Plaintiff Torres**

55.     Plaintiff Torres is a citizen and resident of Queens County, New York. During the applicable statute of limitations period, Plaintiff purchased and used Defendant's Products that possibly contained Listeria monocytogenes, including Products that were subject to the warning. More specifically, during the class period Plaintiff purchased Boar's Head Ham at a Shop Rite store in Queens County, New York during the Class Period at an approximate retail price of $11.54. Prior to purchasing the Product, Plaintiff saw the packaging of the Product.

56.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worthless because they possibly contained Listeria monocytogenes. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

15

**Plaintiff Chuskas**

57.     Plaintiff Chuskas is a resident and citizen of Chicago, Illinois.  During the applicable statute of limitations period, Plaintiff bought Boar's Head Old Fashioned Ham & Boar's Head Bologna for personal household use, near her residence in Chicago, Illinois.  Nowhere on the Products' packaging or webpage did Defendant disclose that the Products could present a risk of Listeria contamination.

58.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worthless because they possibly contained Listeria monocytogenes. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Plaintiff Gatoff**

59.     Plaintiff Gatoff is a citizen and resident of Riverside County, California. During the applicable statute of limitations period, Plaintiff purchased and used Defendant's Products that possibly contained Listeria monocytogenes, including Products that were subject to the warning. More specifically, during the class period Plaintiff purchased Boar's Head Beef Salami at an Albertson's Store in Palm Desert, California during the Class. Prior to purchasing the Product, Plaintiff saw the packaging of the Product.

60.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products

Plaintiff received were worthless because they possibly contained Listeria monocytogenes. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Plaintiff Harper**

61.     Plaintiff Harper is a citizen of Weaverville, CA. In June of 2024, Mr. Harper purchased multiple Boar's Head meat sandwiches from his local Holiday Markets in Weaverville, CA and Redding, CA, including at least one that contained Beef Salami which is one of Defendant's Products that may have contained Listeria monocytogenes.

62.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worthless because they possibly contained Listeria monocytogenes. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

63.     Defendant, Boar's Head Provisions Co. Inc., is a Florida company with its principal place of business in Sarasota, Florida.

64.     Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.   Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## CLASS ALLEGATIONS

65.    Plaintiffs bring this matter on behalf of themselves and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

66.    The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

67.    Plaintiffs also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the states of New York, Illinois, and California at any time during the Class Period (respectively, the "New York Subclass", "Illinois Subclass", and "California Subclass").

68.    The Class and Subclasses are referred to collectively throughout the Complaint as the Class.

69.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

70.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are thousands of consumers in the Class and the New York, Illinois, and California Classes who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

71.    <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.   Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d. Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e. Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

72.     <u>Typicality</u>: Plaintiffs are a member of the Class.  Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

73.     <u>Adequacy</u>: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seeks to represent, their consumer fraud claims are common to all members of the Class, they have a strong interest in vindicating their rights, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

74.     <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

75.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

20

76.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiffs Pompilio and Torres and New York Subclass Members)**

77.    Plaintiffs repeat and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

78.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

79.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

80.    There is no adequate remedy at law.

81.    Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

82.    Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have Listeria monocytogenes —is misleading in a material way in that it, *inter alia*, induced Plaintiffs Pompilio and Torres and the New York Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

83.    Plaintiffs Pompilio and Torres and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiffs and the New York Subclass Members received less than what they bargained and paid for.

84.    Defendant's advertising and Products' packaging and labeling induced Plaintiffs Pompilio and Torres and the New York Subclass Members to buy Defendant's Products.

85.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs Pompilio and Torres and the New York Subclass Members have been damaged thereby.

86.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs Pompilio and Torres and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

**<u>SECOND CAUSE OF ACTION</u>**
**<u>VIOLATION OF NEW YORK GBL § 350</u>**
**(On Behalf of Plaintiffs Pompilio and Torres and the New York Subclass Members)**

87.    Plaintiffs repeat and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

88.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

89.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions

proscribed in said advertisement, or under such conditions as are
customary or usual . . .

90.    Defendant's labeling and advertisements contain untrue and materially misleading

statements and omissions concerning its Products inasmuch as it misrepresents that the Products are

safe for use and doesn't list that the Products contain Listeria monocytogenes.

91.    Plaintiffs Pompilio and Torres and the New York Subclass Members have been

injured inasmuch as they saw the labeling, packaging, and advertising and purchased Products that

were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiffs Pompilio and Torres and

the New York Subclass Members received less than what they bargained and paid for.

92.    Defendant's advertising, packaging, and Products' labeling induced Plaintiffs

Pompilio and Torres and the New York Subclass Members to buy Defendant's Products.

93.    Defendant made its untrue and/or misleading statements and representations willfully,

wantonly, and with reckless disregard for the truth.

94.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law

§ 350.

95.    Defendant made the material misrepresentations described in this Complaint in its

advertising and on the Products' packaging and labeling.

96.    Defendant's material misrepresentations were substantially uniform in content,

presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products

were and continue to be exposed to Defendant's material misrepresentations.

97.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices,

Plaintiffs Pompilio and Torres and New York Subclass Members are entitled to monetary, statutory,

compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**Violations of the California Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(On Behalf of Plaintiffs Gatoff and Harper and the California Subclass)**

98.     Plaintiffs repeat and re-allege all previous paragraphs as if fully included herein.

99.     Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201. 78.

100.    Plaintiffs Gatoff and Harper Class Members who purchased Defendant's Products suffered an injury by virtue of buying products in which Defendant omitted the Products' true quality, reliability, safety, and use.

101.    Had Plaintiffs Gatoff and Harper and Class Members known that Defendant materially misrepresented the Products and/or omitted material information regarding the Products, they would not have purchased the Products.

102.    Defendant's conduct, as alleged herein, violates the laws and public policies of California and the federal government, as set out in this complaint.

103.    There is no benefit to consumers or competition by allowing Defendant to deceptively label, market, and advertise its Products.

104.    Plaintiffs Gatoff and Harper and Class Members who purchased Defendant's Products had no way of reasonably knowing that the Product was deceptively packaged, marketed, advertised, and labeled, was not safe for human consumption, and was unsuitable for its intended use as a food.

105.    Thus, Plaintiffs Gatoff and Harper and California Class Members could not have reasonably avoided the harm they suffered Specifically, Defendant wrongfully omitted the fact that the Products were contaminated with Listeria monocytogenes.

106.    The central function of the Products is to provide nutrition and sustenance to purchasers. The omission of the fact that the Products contained Listeria monocytogenes goes

directly to this central function of the Products and enders the Products incapable of serving their central function.

107.    The presence of Listeria monocytogenes in the Products renders them adulterated and misbranded and in violation of the UCL.

108.    The Products are not nutritious, healthy, or safe for human consumption, and therefore is of an inferior quality and trustworthiness compared to other products in the industry.

109.    The gravity of the harm suffered by Plaintiffs Gatoff and Harper  and Class Members who purchased Defendant's Products outweigh any legitimate justification, motive or reason for packaging, marketing, advertising, and labeling the Products in a deceptive and misleading manner. Accordingly, Defendant's actions are immoral, unethical, unscrupulous and offend the established public policies as set out in federal regulations and are substantially injurious to Plaintiffs Gatoff and Harper and California Class Members.

110.    The above acts of Defendant in disseminating said misleading and deceptive statements to consumers throughout the state of California, including to Plaintiffs Gatoff and Harper and Class Members, were and are likely to deceive reasonable consumers by obfuscating the true nature of Defendant's Products and thus were violations of Cal. Bus. & Prof. Code §§ 17500, et seq.

111.    Defendant has also violated the UCL's proscription against engaging in unfair business practices. Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200 et seq. in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

112.    Defendant has further violated the UCL's proscription against engaging in fraudulent business practices. Defendant's claims, nondisclosures and misleading statements with respect to the

Products, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

113.    Plaintiffs Gatoff and Harper and the other Class Members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Products.

114.    Plaintiffs Gatoff and Harper seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.

115.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase the Products in the future if they can be assured that the Products are properly labeled.

116.    Additionally, Plaintiffs Gatoff and Harper seek restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs and other Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not. On behalf of the Class, Plaintiffs also sees an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

### FOURTH CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW ("FAL")
### CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET SEQ.
#### (On Behalf of Plaintiffs Gatoff and Harper and the California Subclass)

117.    Plaintiffs repeat and re-allege all previous paragraphs as if fully included herein.

118.    The conduct described herein took place within the State of California and constitutes deceptive or false advertising in violation of California Business and Professions Code § 17500.

119.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

120.    Specifically, Defendant wrongfully omitted the fact that the Products were contaminated with Listeria monocytogenes.

121.    The central function of the Products is to provide nutrition and sustenance to purchasers. The omission of the fact that the Products contained Listeria monocytogenes goes directly to this central function of the Products and renders the Products incapable of serving their central function.

122.    The presence of Listeria monocytogenes in the Products renders them adulterated and misbranded and in violation of the FAL.

123.    The Products are not nutritious, healthy, or safe for human consumption, and therefore is of an inferior quality and trustworthiness compared to other products in the industry. 103. At the time of its misrepresentations, Defendant was aware that the Products contained Listeria monocytogenes, which no reasonable consumer would expect would be in products with the Nutrition Representations, or was aware that it lacked the information and/or knowledge required to make such a representation truthfully. Defendant concealed and omitted and failed to disclose this information to Plaintiffs and California Class Members.

124.     Defendant's descriptions of the Products were false, misleading, and likely to deceive Plaintiffs and other reasonable consumers.

125.    Defendant's conduct therefore constitutes deceptive or misleading advertising.

126.    Plaintiffs Gatoff and Harper have standing to pursue claims under the FAL as they reviewed and relied on Defendant's packaging, advertising, representations, and marketing materials regarding the Products when selecting and purchasing the Products.

127.    In reliance on the statements made in Defendant's advertising and marketing materials and Defendant's omissions and concealment of material facts regarding the quality and use of the Products, Plaintiffs Gatoff and Harper and California Class Members purchased the Products.

128.    Had Defendant disclosed the true nature of the Products, Plaintiffs Gatoff and Harper and California Class Members would not have purchased the Products or would have paid substantially less for it.

129.    Plaintiffs Gatoff and Harper seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase the Products in the future if they can be assured that the Products are properly labeled.

130.    Additionally, Plaintiffs Gatoff and Harper seek restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs Gatoff and Harper and the Class. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

131.    On behalf of the Class, Plaintiffs Gatoff and Harper also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CLRA")**
**CAL. CIV. CODE § 1770(A)(5), ET SEQ.**
**(On behalf of Plaintiff Harper and the California Subclass)**

132.    Plaintiffs repeat and re-allege all previous paragraphs as if fully included herein. 119. The CLRA prohibits twenty-seven enumerated unfair business practices.

133.    Cal. Civ. Code section 1770(a)(5) of the CLRA prohibits representing that a seller's goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.

134.    Cal. Civ. Code section 1770(a)(7) of the CLRA prohibits representing that its goods or services are of a particular standard, quality, or grade, if they are of another.

135.    Cal. Civ. Code section 1770(a)(9) of the CLRA prohibits advertising goods and services with the intent not to sell them as advertised.

136.    Defendant violated Cal. Civ. Code sections 1770(a)(5) and 1770(a)(7) of the CLRA by representing that the Products, were safe for consumption when, at the point of sale Defendant knew or should have known that the Products contained Listeria monocytogenes.

137.    Defendant violated Cal. Civ. Code section 1770(a)(9) of the CLRA when it advertised the Products as not containing Listeria monocytogenes with the intent not to sell them as advertised.

138.    As a result of this violation, in June and August 2024, Plaintiff Harper incurred damages in the form of purchasing purchased multiple Boar's Head meat sandwiches from his local Holiday Markets in Weaverville, CA and Redding, CA, including at least one that contained Beef Salami which was one of the Products involved in the recall.

139.    Plaintiff Harper spent money on Products. Plaintiff's Products lost all value as a result of contamination with Listeria monocytogenes.

140.     As a result of this violation, Plaintiff Harper and Class Members have been deprived of the safely consumable food Products which Defendant represented they were purchasing. Had Plaintiff Harper and Class Members known the true nature of the Products, Plaintiff and Class Members would have paid less for the Products, would have returned the Products during the respective buyer's remorse periods, or would not have purchased the Products at all.

141.     Under Cal Civ. Code section 1781(a), any consumer who suffers damage as a result of a violation of this section may bring a class action on behalf of himself and all those similarly situated. On October 21, 2024, pursuant to Cal. Civ. Code section 1781(a)(1) and (2), Plaintiff Harper sent notice of the violation and demand for correction to Defendant's headquarters via certified mail, return receipt requested.

142.     Plaintiff Harper has no adequate remedy at law because he is currently unable to determine whether he will be able to use the Products in the future, and he is uncertain whether Defendant will attempt to fix the Recall or provide other remedies. Plaintiff was left with uncertainty as to the best course of action after seeing the convoluted and deficient Recall. Unless the Court enjoins further unlawful acts by Defendant, Plaintiff and Class Members face uncertainty as to which of these choices would minimize their damage. Defendant benefitted substantially from Plaintiff's purchases because Defendant received the majority of the revenue from the purchase.

143.     Therefore, Plaintiff Harper and the Class are entitled to injunctive relief, actual damages, restitution, punitive damages, and all other relief that the court deems proper, including costs and attorney's fees, under Cal. Civ. Code section 1780.

## SIXTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Nationwide Class)

144.     Plaintiffs repeat and re-allege all previous paragraphs as if fully included herein.

145.     Defendant's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiffs' and Class Members' purchases of the Products, and the

economic benefits conferred on Defendant are a direct and proximate result of its unlawful and inequitable conduct.

146.    It would be inequitable, unconscionable, and unjust for Hershey to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

147.    As a result, Plaintiffs and Class Members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendant as a result of such business practices.

**SEVENTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On behalf of Plaintiffs and the Nationwide Class)**

148.    Plaintiffs repeat and re-allege all previous paragraphs as if fully included herein.

149.    Plaintiffs and each member of the Classes, formed a contract with Defendant at the time they purchased the Products.

150.    The terms of the contract include the promises and affirmations of fact, that the products were safe to consume, made by Defendant on the Products' packaging and through marketing and advertising.

151.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the Classes and Defendant.

152.    As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Products are safe to consume by people of all ages and genders.

153.    Plaintiffs and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

154.    Defendant breached express warranties relating to the Products and their qualities because Defendant's Products possessed the capability to contaminate the consumers with Listeria at the time of purchase and the Products do not conform to Defendant's affirmations and promises described above.

155.    Plaintiffs and each of the members of the Classes would not have purchased the Products had they known the true nature of the risk of the Products contaminating those who consumed the Products.

156.    As a result of Defendant's breach of warranty, Plaintiffs and each Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## EIGHTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
### (On behalf of Plaintiffs and the Nationwide Class)

157.    Plaintiffs repeat and re-allege all previous paragraphs as if fully included herein.

158.    Defendant is engaged in the business of designing, manufacturing, constructing, making, selling, distributing, labeling, advertising, retailing, and/or otherwise placing the Product into the stream of commerce.

159.    The Products are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Products, as goods, were purchased.

160.    Defendant's warranty expressly applies to the purchaser of the Products, creating privity between Defendant and Plaintiffs and Class Members.

161.    However, privity is not required because Plaintiffs and Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Defendant's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiffs and Class Members.

162.    Defendant has been provided sufficient notice of its breaches of implied warranties associated with the Products. Defendant was put on constructive notice of its breach through its review of consumer complaints and other reports.

163.    Had Plaintiffs, Class Members, and the consuming public known that the Products could contaminate them and cause harm, they would not have purchased the Products or would have paid less for them.

164.    As a direct and proximate result of the foregoing, Plaintiffs and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**NINTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On behalf of Plaintiffs and the Nationwide Class)**

165.    Plaintiffs repeat and re-allege all previous paragraphs as if fully included herein.

166.    Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Classes.

167.    There was a sale of goods from Defendant to Plaintiffs and the Classes.

168.    As the developer, manufacturer, marketer, distributor, and/or seller of the defective Products, Defendant impliedly warranted to Plaintiffs and the Classes that its Products were fit for their intended purpose in that they would be safe for Plaintiffs and the Classes to consume. Contrary to these representations and warranties, the Products were not fit for their ordinary consumption, and did not conform to Defendant's affirmations of fact and promises included with the packaging.

169.    The implied warranty of merchantability included with the sale of each Product means that Defendant guaranteed that the Products would be fit for the ordinary purposes for which deli meats are consumed and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant, and Plaintiffs and the Class Members.

170. Defendant breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing reasonably safe for consumption deli meat because the Products have a risk of contaminating the consumer with Listeria. Therefore, the Products are not fit for their particular purpose.

171. Defendant breached the implied warranty in the contract for the sale of the Products by knowingly selling to Plaintiffs and the Classes a product that Defendant knew would expose Plaintiffs and the Classes to health risks, thus meaning Defendant knew that the Products were not fit for their intended consumption as safe to consume deli meats.

172. Defendant was on notice of this breach, as they were made aware of the adverse health effects caused by risk of Listeria contamination that can result from the consumption of their Products.

173. Plaintiffs and the Classes did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

174. Plaintiffs and members of the Classes are the intended beneficiaries of Defendant's implied warranties.

175. The Products were not altered by Plaintiffs or the members of the Classes.

176. Plaintiffs and members of the Classes consumed the Products in the ordinary way such deli meats were intended to be consumed.

177. The Products were defective when they left the exclusive control of Defendant.

178.    The Products were defectively designed and/or manufactured and unfit for their intended purpose as safe to consume deli meats, and Plaintiffs and members of the Classes did not receive the goods that they bargained for.

179.    Plaintiffs and members of the Classes purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

180.    As a result of the defect in the Products, Plaintiffs and members of the Classes have suffered damages including, but not limited to, the cost of the defective product, loss of use of the product and other related damage.

181.    Defendant breached the implied warranty of merchantability to the Plaintiffs and Class members.

182.    Thus, Defendant's attempt to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void.

183.    Plaintiffs and Class members have been damaged by Defendant's breach of the implied warranties.

184.    Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relied, as well as costs and attorneys' fees, available under law.

### TENTH CAUSE OF ACTION
### FRAUDULENT CONCEALMENT
**(On behalf of Plaintiffs and the Nationwide Class)**

185.    Plaintiffs repeat and re-allege all previous paragraphs as if fully included herein.

186.    Defendant aimed to portray the Product as safe for frequent and repeated consumption and omitted key facts concerning the potential harm from contamination due to Listeria.

187.    Defendant, acting through its representatives or agents, delivered the Product to its distributors and through other channels to consumers, including the Plaintiffs and Class Members.

188.    Defendant, as the owner, manufacturer, marketer, and seller of the Products, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the Products. Defendant owed Plaintiffs and Class Members a duty to disclose because the risks associated with Listeria contaminated products were known and/or accessible exclusively to Defendant, who had superior knowledge of the facts; because the facts would be material to consumers; because the Defendant actively concealed or understated them; because the Defendant intended for consumers to rely on the omissions in question; and because Defendant made partial representations concerning the same subject matter as the omitted facts. Furthermore, because the Product poses an unreasonable risk of substantial bodily injury, Defendant was under a continuous duty to disclose that the Products contained a bacteria known to have adverse health effects.

189.    Defendant willfully and knowingly omitted material information regarding the quality and safety of the Products as discussed herein. Defendant countenanced these material omissions to boost or maintain sales of the Product, and to create a false assurance that prolonged loyalty to Defendant's brand—the continued consumption of the Product—would not place consumers in danger. The omitted information and partial representations were material to consumers because they play a significant role in determining the value of the Product at the time of purchase.

190.    During this time, Plaintiffs, and members of the Classes, were using the Products without knowing the Products could contaminate them due to the Listeria bacteria found in them.

191.    Defendant failed to discharge its duty to disclose these materials facts.

192.    Although Defendant had a duty to ensure the accuracy of the information regarding the Products because such information was within the exclusive knowledge of Defendant and because the information pertains to serious health issues, Defendant failed to satisfy its duty.

193.    Defendant engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively convey that their products were safe. Defendant's actions were done to gain a commercial advantage over competitors, and to drive consumers, like the Plaintiffs and Class Members, away from purchasing a competitor's product.

194.    Plaintiffs and the Classes reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Products manufactured and sold by Defendant had they known they possessed this risk of contamination due to Listeria.

195.    As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiffs and the Classes, suffered damages in the amount of monies paid for the defective Products.

196.    Plaintiffs and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiffs and the Class Members paid for the Product, awards medical monitoring expenses, costs, interest and attorneys' fees.

### ELEVENTH CAUSE OF ACTION
### STRICT LIABILITY- FAILURE TO WARN
**(On behalf of Plaintiffs and the Nationwide Class)**

197.    Plaintiffs repeat and re-allege all previous paragraphs as if fully included herein.

198.    Defendant had a duty to warn Plaintiffs and the Class members regarding the Defect, that being risk of contamination due to Listeria, with the Products.

199.    Defendant, which is engaged in the business of selling, manufacturing and supplying the Products placed them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Products.

200.    The Products supplied to Plaintiffs and Class Members was defective in design and formulation and unreasonably dangerous when they left the hands of Defendant and they reached the consumer of the Products, including Plaintiffs and Class Members, without substantial alteration in the condition in which they were sold.

201.    Defendant was in a superior position to know of the Defect, yet as outlined above, chose to do nothing when the defect became known to them.

202.    Defendant failed to provide adequate warnings regarding the risks of the Products after knowledge of the Defect was known only to them.

203.    Defendant had information regarding the true risks but failed to warn Plaintiffs and members of the Classes to strengthen their warnings.

204.    Despite their knowledge of the Defect and obligation to unilaterally strengthen the warnings, Defendant instead chose to actively conceal this knowledge from the public.

205.    Plaintiffs and members of the Classes would not have purchased, chosen, and/or paid for all or part of the Products if they knew of the Defect and the risks of purchasing the Products.

206.    This Defect proximately caused Plaintiffs and Class members' damages.

207.    The Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

**TWELFTH CAUSE OF ACTION**
**STRICT LIABILITY- DESIGN AND FORMULATION DEFECT**
**(On behalf of the Nationwide Class and, alternatively, the Subclass)**

208.    Plaintiffs repeat and re-allege all previous paragraphs as if fully included herein.

209.    The design and formulation of the Products was defective and unreasonably dangerous.

210.    The risk of bacterial contamination contained within the Products creates unreasonable danger.

211.    The design and formulation of the Products rendered them not reasonably fit, suitable, or safe for their intended purpose.

212.    The risk of bacterial contamination contained within the Products outweighed the benefits and rendered the Products unreasonably dangerous.

213.    Defendant's Products were defective because the design and formulation of the Products included Listeria. After Defendant knew or should have known of the risk of injury from the Listeria found in the Products, Defendant continued to promote the Products as safe and effective to the Plaintiffs, Class Members, and public.

214.    There are other deli meats that do not pose the risk of contamination due to Listeria, meaning that there were other means of production available to Defendant.

215.    The Products were unreasonably unsafe, and the Products should not have been sold in the market.

216.    The Products did not perform as an ordinary consumer would expect.

217.    The Defendant's negligent design/formulation of the Products was the proximate cause of damages to the Plaintiffs and the Class members.

218.    Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law

**THIRTEENTH CAUSE OF ACTION**
**NEGLIGENT FAILURE TO WARN**
**(On behalf of the Nationwide Class and, alternatively, the Subclass)**

219.    Plaintiffs repeat and re-allege all previous paragraphs as if fully included herein.

220.    Defendant owed Plaintiffs and Class members a duty of care and to warn of any risks associated with the Products.

221.    Defendant knew or should have known of the defect but failed to warn Plaintiffs and members of the Classes.

222.    Plaintiffs had no way of knowing of the Products' latent defect.

223.    Defendant's failure to warn caused Plaintiffs and Class members economic damages and injuries in the form of lost value due to risk of contamination due to Listeria exposure.

224.    Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

**FOURTEENTH CAUSE OF ACTION**
**NEGLIGENT DESIGN & FORMULATION DEFECT**
**(On behalf of Plaintiffs and the Nationwide Class)**

225.    Plaintiffs repeat and re-allege all previous paragraphs as if fully included herein.

226.    Defendant owed Plaintiffs and the Classes a duty to design and formulate the Products in a reasonable manner.

227.    The design and formulation of the Products was defective and unreasonably dangerous, causing exposure to a material with harmful effects. Thus, the Products are now worthless.

228.    The design and formulation of the Products caused them to be not fit, suitable, or safe for their intended purpose. The dangers of the Products outweighed the benefits and rendered the products unreasonably dangerous.

229.    There are other deli meats that do not contaminate the consumers with Listeria.

230.    The risk/benefit profile of the Products was unreasonable, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

231.    The Defendant's negligent design/formulation of the Products was the proximate cause of damages to the Plaintiffs and the Class members.

232.    Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

### FIFTEENTH CAUSE OF ACTION
### NEGLIGENCE
**(On behalf of Plaintiffs and the Nationwide Class)**

233.    Plaintiffs repeat and re-allege all previous paragraphs as if fully included herein.

234.    Defendant owed a duty to consumers to produce a product that was safe for its intended consumption.

235.    Defendant breached this duty by producing a product that was dangerous for its intended consumption. Defendant knew or should have known that Listeria contaminated deli meats would cause injuries once exposed to humans and thus be worthless as a safe-to-consume deli meat.

236.    As a direct result of this breach, Plaintiffs suffered injury in that Plaintiffs have been deprived of their benefit of the bargain. Plaintiffs' injuries were caused in fact by Defendant's breach. But for Defendant's negligent manufacture and improper oversight, Plaintiffs would not have been injured.

237.    Further, Plaintiffs' injuries were proximately caused by Defendant's breach. It is foreseeable that poorly designed and formulated deli meats containing Listeria would cause injury, and it is foreseeable that a user would lose their benefit of the bargain if they purchased dangerous deli meats.

238.    Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## SIXTEENTH CAUSE OF ACTION
## FRAUD BY OMISSION
### (On behalf of Plaintiffs and the Nationwide Class)

239.    Plaintiffs repeat and re-allege all previous paragraphs as if fully included herein.

240.    Defendant failed to disclose material facts about the nature of the Products. Specifically, Defendant failed to disclose material facts about the presence of Listeria monocytogenes in the Products.

241.    Because the technology that could detect Listeria monocytogenes was not available to the public and Defendant controlled the manufacturing and distribution of the Products, Plaintiffs and Class Members had no reasonable means of knowing that Defendant's representations concerning the Products were incomplete, false, and misleading. Plaintiffs and Class Members did not and reasonably could not have discovered Defendant's deceit before they purchased the Products or before the end of their buyer's remorse periods.

42

242. Defendant made material omissions regarding its business practice of selling Products contaminated with Listeria monocytogenes to coerce Plaintiffs and Class members to buy the Products that are sold for substantial and unjustified premiums considering their true condition. Had Plaintiffs and Class members known that Defendant employed such tactics, they would not have purchased the Products in the first place, would not have purchased it at the price they did, or would have returned it during their respective buyer's remorse periods. Defendant had a duty to disclose the true nature of the Products to Plaintiffs, Class Members, and the public because Defendant's conduct with respect to the Products results in material and unreasonable damage to the property of Plaintiffs and Class Members and Defendant possessed exclusive knowledge of it.

243. Defendant knew, or in the exercise of reasonable diligence should have known, that its representations and omissions were false and misleading at the time it made them. Defendant deliberately provided false representations and omissions to prevent customers from learning the contaminated nature of the Products and further inducing its customers to purchase new Products. The facts about the Products that Defendant suppressed and omitted were material to a reasonable objective consumer, and Plaintiffs and Class Members were unaware of them until they had already purchased the Products. Had Defendant disclosed the true nature of the Products on the labels or elsewhere, Plaintiffs and Class Members would have been aware of it, and would not have purchased the Products, would have paid substantially less for it, or would have returned it for a refund.

244. When deciding to purchase the Products, Plaintiffs and Class Members reasonably relied to their detriment upon Defendant's material omissions regarding the Products.

245.    Plaintiffs and Class Members sustained damages as a direct and proximate result of Defendant's deceit and fraudulent concealment. Among other damage, Plaintiffs and Class Members did not receive the value of the premium price they paid for the Products.

246.    Defendant's fraudulent omission was malicious, oppressive, deliberate, intended to defraud Plaintiffs and Class Members and enrich Defendant, and in reckless disregard of Plaintiffs' and Class Members' rights, interests, and well-being. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct, to be determined according to proof.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representatives and Plaintiffs' attorneys as Class Counsel of the Class under Rule 23 of the FRCP;

(b) For an order declaring the Defendant's conduct violates the causes of action referenced herein;

(c) For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d) Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

(e) Awarding monetary damages and treble damages;

(f) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(g) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(h) Awarding all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class Members are entitled excluding any derivative from Plaintiffs' CLRA claim;

(i) Awarding punitive damages;

(j) Awarding prejudgment interest on all amounts awarded;

(k) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys, experts, and reimbursement of Plaintiffs' expenses;

(l) Awarding injunctive relief as pleaded or as the Court may deem proper; and

(m) Granting such other and further relief as the Court may deem just and proper.

Dated: December 16, 2024

Respectfully submitted,

**SULTZER & LIPARI, PLLC**

By:      /s/ Jason P. Sultzer
Jason P. Sultzer, Esq.
Jeremy B. Francis, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com


*Counsel for Plaintiffs Pompilio Torres, Gatoff and the Class*

**REESE LLP**
Michael R. Reese, Esq.
Carlos F. Ramirez, Esq.
100 West 93rd Street, 16th Floor
New York, New York 10025
(212) 643-0500
mreese@reesellp.com

Nick Suciu III
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Road, Suite 115 Bloomfield Hills, MI 48301  Tel: (313) 303-3472
nsuciu@milberg.com

**LEVIN SEDRAN & BERMAN LLP**
Charles E. Schaffer
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3697
Tel: (215) 592-1500
CSchaffer@lfsblaw.com

Jeffrey K. Brown
**LEEDS BROWN LAW, P.C**.
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
Email: jbrown@leedsbrownlaw.com

*Counsel for Plaintiffs Torres, Gatoff and the Class*

*/s/ Roy T. Willey, IV*
Roy T. Willey, IV
Paul J. Doolittle *(Pro Hac Vice Forthcoming)* **POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street Charleston, SC 29403
Tel: (803) 222-2222
Fax: 843-494-5536
Email: roy@poulinwilley.com
          pauldoolittle@poulinwilley.com
          cmad@poulinwilley.com

*Counsel for Plaintiff Chuskas and the Class*

/s/ Michael F. Ram_____
 Michael F. Ram
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 846-3862
Facsimile: (415) 358-6293

*Counsel for Plaintiff Harper and the Class*