UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Frank Pompilio, Rita Torres, Samantha Chuskas, Sheryl Gatoff, and Robby Harper, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br>Boar's Head Provisions Co. Inc.,<br><br>Defendant. | Case No. 7:24-cv-08220<br><br>Hon. Philip M. Halpern |

### DECLARATION OF JASON SULTZER IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**I.    INTRODUCTION**

I, Jason P. Sultzer, submit this Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement, and affirm that the following is truthful and accurate:

1.    I am one of the attorneys principally responsible for the handling of this case. I am personally familiar with the facts set forth in this declaration. If called as a witness, I could and would competently testify to the matters stated herein.

2.    Attached as **Exhibit 1** is the Settlement Agreement with exhibits in this action.

3.    This proposed class action settlement would resolve the claims of purchasers of Defendant Boar's Head Provisions Co. Inc ("Boar's Head" or "Defendant") food products ("Covered Products").

4.    Plaintiffs seek to represent a nationwide class of consumers who purchased the Covered Products. Plaintiffs' Counsel has substantial experience in prosecuting class actions and,

in particular, actions that involve contamination of consumer products. *See, e.g. Swetz v. The Clorox Company*, No. 7:22-cv-9374 (S.D.N.Y.) (Halpern, J.); *Clinger v. Edgewell* Personal *Care Brands,* LLC, 3:21-cv-01040-JAM (D. Conn); *Bangoura v. Beiersdorf, Inc. et al*, 1:22-cv-00291-BMC (E.D.N.Y.) (Cogan, J.); *Catalano v. Lyons Magnus, LLC*, Case No. 7:22-cv-06867) (S.D.N.Y. April 10, 2024) (Karas, J); *Patora v. Colgate-Palmolive Co.*, No. 7:23-cv-01118-VB (S.D.N.Y.) (Bricetti, J.) .

5. On January 31, 2025, the Court granted Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement in this action and granted related relief. ECF No. 19 (Preliminary Approval Order). In that Order, the Court conditionally designated me and six other lawyers as Class Counsel for the Settlement Class. ECF No. 19 at ¶ 6. Those lawyers are: Jeremy Francis of Sultzer & Lipari, PLLC, Michael Reese of Reese LLP, Nick Suciu of Milberg Coleman Bryson Phillips Grossman, PLLC, Charles Schaffer of Levin Sedran & Berman LLP, Jeffrey K. Brown of Leeds Brown Law, P.C., and Paul Doolittle of Poulin, Willey, Anastopoulo, LLC. (collectively, "Class Counsel"). *Id*.

6. Per the terms of the Settlement Agreement, the Settlement Fund means a total payment by Defendant in the amount of $3,100,000. *See* Ex. 1. Assuming the Court grants the Attorneys' Fees in the amount of $1,033,333.33, attorneys' costs and expenses in the amount of $38,060.33, the Incentive Awards to the Class Representatives in the total amount of $5,000.00, and the estimated costs of the notice and administrative costs in the amount of $300,000, the estimated Available Settlement Funds amount to $1,723,606.34.

7. The reaction to the Settlement has been overwhelmingly favorable. Zero objections have been filed as to the Settlement and three valid requests for exclusion have been received by the Claim Administrator.

8. As a result of the robust Notice Program, the Claim Administrator has received

approximately 66,000 Valid Claim forms.

9. The average estimated recovery for Class Members who made claims is significantly greater than the estimated average price of the products, $9.75. The average estimated recovery for those that submitted a Valid Claim, with Proof of Purchase, is $58.61. The average estimated recovery for those who submitted a Valid Claim without Proof of Purchase, is $27.73.

10. Another significant factor supporting final approval is the social benefit for consumers and society as a whole. Because settlements like these require companies to pay millions of dollars that ultimately impacts profitability, it deters corporations from allowing potentially harmful product contaminations from entering the stream of commerce and encourages stricter testing protocols and to maintain cleaner facilities. Here, Plaintiffs obtained significant non-monetary relief. Specifically, in part, as a result of the Litigation, Boar's Head made modifications to its practices and procedures regarding bacterial contamination, including implementing more frequent inspections and improved employee training.

II. **BACKGROUND, PROCEDURAL HISTORY, AND SETTLEMENT**

12. Before commencing the Litigation, Class Counsel discussed the case with hundreds of potential named plaintiffs and extensively investigated and analyzed, among other things, Defendant's marketing campaign, the relevant regulatory guidelines concerning labeling and advertising disclosure requirements for food products, regulatory guidelines regarding the presence of Listeria in food products, the scientific research concerning the dangers of Listeria, and research regarding how Defendant should have known the Products contained or were at risk of containing Listeria. Class Counsel also conducted extensive testing of the Products to determine the actual contamination rate.

13. On or about August 1, 2024, Plaintiff Torres filed a recall-related putative

3

nationwide class action lawsuit against Boar's Head, captioned *Rita Torres v. Boar's Head Provisions Co., Inc.*, 1:24-cv-05405 (E.D.N.Y.), asserting claims for violations of N.Y. GBL §§349 & 350 in connection with her alleged purchase of one or more recalled products (the "*Torres* Action").

14. On or about August 16, 2024, Plaintiff Chuskas filed a recall-related putative nationwide class action lawsuit against Boar's Head, captioned *Samantha Chuskas v. Boar's Head Provisions Co., Inc.*, 1:24-cv-07343 (N.D. Ill.), asserting claims for violation of Illinois consumer protection laws, strict liability, negligence, breach of warranty, fraudulent concealment, and unjust enrichment in connection with her alleged purchase of one or more recalled products (the "*Chuskas* Action").

15. On or about August 26, 2024, Plaintiff Gatoff filed a recall-related putative nationwide class action lawsuit against Boar's Head, captioned *Sheryl Gatoff v. Boar's Head Provisions Co., Inc.*, 8:24-cv-01868 (C.D. Cal.), asserting claims for violation of California consumer protection laws and unjust enrichment in connection with her alleged purchase of one or more recalled products (the "*Gatoff* Action").

16. On or about October 21, 2024, Plaintiff Robby Harper filed a recall-related putative nationwide class action lawsuit against Boar's Head, captioned *Robby Harper v. Boar's Head Provisions Co., Inc.*, 2:24-cv-02910-DC-DMC (E.D. Cal.), asserting claims for violation of California consumer protection laws and fraud by omission in connection with his alleged purchase of one or more recalled products (the "*Harper* Action").

17. Finally, on or about October 29, 2024, Plaintiff Frank Pompilio filed the instant recall- related putative nationwide class action lawsuit against Boar's Head, captioned Frank *Pompilio v. Boar's Head Provisions Co., Inc.*, 7:24-cv-08220 (S.D.N.Y.), asserting claims for violations of N.Y. GBL §§349 & 350 in connection with his alleged purchase of one or more

recalled products (the "*Pompilio* Action").

19. Class Counsel took it upon themselves to self-organize and coordinate the actions so that all the cases would proceed before this Court, eliminating duplication for the parties and the Courts and limiting the expense to both sides. This coordination also avoided a potentially lengthy leadership fight among counsel for Plaintiffs in the five actions.

19. Class Counsel worked together to thoroughly analyze the legal landscape, including conducting research into the various state consumer protection laws and available remedies, Article III standing, preemption and evaluating matters relating to class certification, in order to fully evaluate the risks and benefits to a potential early resolution.

20. Based on the Parties' exchange of information and their respective investigations into the claims and defenses asserted in the actions, the Parties agreed to proceed to private mediation with the Honorable Steven M. Gold (Ret.). In advance of the mediation, the Parties exchanged discovery relevant to their claims and defenses. This included discovery related to Plaintiffs' claims, including extensive sales, distribution and marketing information regarding the Covered Products, and the technical scientific information pertaining to the manufacturing process and suppliers regarding the sources and reasons for the Listeria contamination, as well as the protocols put in place by Defendant to ensure that such a contamination does not reoccur. This is largely the same information that would have been produced had the case proceeded to formal discovery. Accordingly, the Parties were sufficiently informed at the time of the mediation of the strengths and weaknesses of their respective positions, the size of the putative class, and the damages at issue to negotiate a reasonable settlement.

21. In addition, Class Counsel conducted significant legal research and an investigation into industry reports, scientific literature, and the Covered Products' market segment as follows:

    a. Class Counsel thoroughly analyzed the legal landscape and evaluated the risks and benefits of prosecuting the Litigation and an early resolution, including research

5

        into the various state consumer protection laws and available remedies, and evaluating class certification issues.

b. Class Counsel extensively analyzed the claims alleged in the complaints, Defendant's advertising campaigns, the relevant regulations and guidelines concerning labeling and advertising disclosure requirements for consumer products such as the contaminated Boar's Head products, regulations and guidelines regarding the presence of hazardous and dangerous substances such as bacteria in consumer products, the scientific research and literature concerning the dangers of bacteria (including *Listeria*), and research regarding how Defendant should have known the Products contained or were at risk of containing bacteria.

c. Class Counsel investigated and consulted with industry experts regarding inter alia the presence of bacteria in beverage and nutrition products, regulations governing bacteria in consumer products, potential sources and elimination of that source of bacteria in consumer products, and testing and screening for bacteria in consumer products.

d. Class Counsel analyzed the chain of distribution of the Covered Products and pricing per unit to help support and determine Plaintiffs' damages model, as well as the exact scope of the recall.

e. Class Counsel investigated and consulted with experts regarding damages models for consumers purchasing an adulterated and or misbranded product contaminated with bacteria.

f. Class Counsel conducted research into the market segment related to the Covered Products to understand the potential scope of this matter, economic losses to Class Members, and marketing and sales trends, practices, and patterns.

22. Class Counsel also conducted testing of the products to determine the scope of potential contamination

23. On October 18, 2024, the Parties attended a full-day mediation with Judge Gold.

24. At the mediation, the experienced counsel on both sides engaged in extensive arm's-length negotiations and were able to reach an agreement in principle to settle the economic claims on a class-wide basis by creating a non-reversionary $3,100,000 common fund.

25. Before and during these settlement discussions and mediation, the Parties had an arm's-length exchange of sufficient information to permit Plaintiffs and their counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions.

26. The Parties did not discuss Attorneys' Fees and Costs or any potential Incentive

Award until they first agreed on the substantive terms of this settlement.

27.     On November 15, 2024, the Parties informed the Court that they had reached a resolution of the matters and requested permission to file a consolidated amended complaint and a motion for preliminary approval, which the Court granted. ECF Nos. 8, 9. On December 16, 2024, Plaintiffs filed a consolidated amended complaint for the purposes of settlement. ECF No. 10. The consolidated amended complaint alleges violations of New York, and California consumer protection laws and claims for breach of express and implied warranties, fraud, and negligent misrepresentation and unjust enrichment. *Id*.

28.     On or about January 14, 2025, the Parties executed the Settlement Agreement, and Plaintiffs moved for preliminary approval of the class action settlement. (ECF No. 13).

29.     With respect to selecting a settlement administrator, before selecting Angeion, Plaintiffs sought multiple bids from claims administrators and interviewed and vetted Angeion and its proposed notice plan for this settlement.

30.     The parties selected Angeion based on its reputation for excellent work and breadth of experience administering other similar consumer class actions and the state-of-the-art fraud detection system (an issue that has become more prevalent in the digital age). For example, Angeion has administered very similar settlements regarding contamination of consumer products. See *Bangoura v. Beiersdorf, Inc. et al*, 1:22-cv-00291-BMC (E.D.N.Y.); *Catalano v. Lyons Magnus*, LLC, No. 7:22-cv-06867) (S.D.N.Y.); *Swetz v. The Clorox Company*, No. 7:22-cv-9374 (S.D.N.Y.); *Patora v. Colgate-Palmolive Co.*, No. 7:23-cv-01118-VB (S.D.N.Y.).  *See also In re Novartis*, 2024 U.S. Dist. LEXIS 132677, *15 (S.D.N.Y. Jul. 26, 2024) (finding that "Angeion's fraud detection system is robust and appropriately designed to weed out fraudulent claims.").

31.     On January 31, 2025, the Court granted Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement, Preliminary Certification of Settlement Class and Approval of

7

Notice Plan and scheduled a Final Approval hearing for August 13, 2025 (ECF No. 19).

## SUMMARY OF SETTLEMENT BENEFITS AND RISKS OF CONTINUED LITIGATION

32.     As stated above, Class Counsel has substantial experience in prosecuting class actions of a similar size, scope, and complexity; and in particular actions that involve contamination of consumer products. *See, e.g. Swetz v. The Clorox Company*, No. 7:22-cv-9374 (S.D.N.Y.) (Halpern, J.); *Clinger v. Edgewell Personal Care Brands,* LLC, 3:21-cv-01040-JAM (D. Conn) (Meyer, J.); *Bangoura v. Beiersdorf, Inc. et al*, 1:22-cv-00291-BMC (E.D.N.Y.) (Cogan, J.); *Catalano v. Lyons Magnus, LLC*, Case No. 7:22-cv-06867) (S.D.N.Y. April 10, 2024) (Karas, J);; *Patora v. Colgate-Palmolive Co.*, No. 7:23-cv-01118-VB (S.D.N.Y.) (Briccetti, J.).

33.     Class Counsel has made $3.1 million in valuable benefits available to Class Members, which will be exhausted to pay all Approved Claims, as well as any attorneys' Fee Award, Service Awards, and Notice and Other Administrative Costs that the Court approves. § 1.32    And, Specifically, in part as a result of the Litigation, Boar's Head made modifications to its practices and procedures regarding bacterial contamination.  Class Members who submit a Valid Claim that is not accompanied by Proof of Purchase shall receive the total of the average retail price for up to two (2) Covered Products claimed per household, with Boar's Head to provide sufficient data to show the average retail prices of the Covered Products. §4.4.2. Class Members who submit a Valid Claim that is accompanied by Proof of Purchase of a Class Product shall be entitled to receive a full refund of the amount of money he or she spent on the Class Products that is documented by Proof of Purchase, inclusive of taxes. §4.4.1.  If a Settlement Class Member or any person in that Settlement Class Member's Household received Recall Reimbursement from Defendant, as reflected on the Settlement Class Member's Claim Form or in the records of Defendant, the amount of that Settlement Class Member's payment shall be reduced by the amount of Recall Reimbursement that Settlement Class Member or persons in that Settlement Class

8

Member's Household have received (provided that the payment shall not be reduced below $0.00). §4.4.3. Each Settlement Class Member's payment shall be increased or decreased on a *pro rata* basis such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds. §4.4.4.

34. The Settlement achieved by Class Counsel benefits individual Class Members who submitted claims in a number of ways. First, besides putting significant money directly in their pocket well above the average purchase price, it has significantly expanded the scope of Defendant's recall/refund program by providing monetary relief to Class Members who did not receive a refund through the Recall. In addition, the comprehensive notice plan initiated by Class Counsel reached a far greater number of consumers, resulting in approximately 66,000 claims, while only approximately $394,000 in refund claims were made as part of Defendant's recall program.

35. Second, the settlement benefits the entire Class as a whole, whether class members submitted a claim or not, by providing a high percentage of the total possible recovery in this litigation in the event the case was successfully tried to conclusion. Defendant estimates that the total value of the Covered Products that reached consumers was approximately $10-11 million, meaning that the $3.1 million settlement fund is between 28% and 31% of damages under a total disgorgement theory. This alone is a very significant outcome in cases like these, especially considering the risks of losing before or at trial, and how efficiently it was done. However, the full disgorgement theory would have been challenged by Defendant at trial and may not have succeeded because Defendant would argue that even contaminated products are not completely worthless.

36. As a result, Plaintiffs' damages theory likely to succeed here would have been based on the premium class members paid over what they would have paid had they known about the

contamination or risk of contamination. This kind of "price-premium" damages analysis is widely accepted in consumer deception cases in this Circuit. See e.g. (See *Shaya Eidelman v. Sun Prods. Corp.*, 2022 U.S. App. LEXIS 15480, *1 (2d Cir. 2022) ("One method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a price premium")).

37. Based on Class Counsels' experience in these kinds of consumer product contamination cases, as well as discussions with an economic expert who frequently uses conjoint analysis to calculate damages in similar cases, the best-case, price-premium scenario for products like this is generally around 30% of the purchase price. Here, the Settlement Class's best day under a 30% price premium model, would be between $3.33 and $3.66 million dollars, and the Settlement Agreement provides between 85% and 93% of this value. Thus, the class here is recovering somewhere between approximately 28-31% of the full disgorgement damages Plaintiffs might have recovered at trial and 85-93% of the price premium. Even on the low end, this is a significant recovery.

38. Moreover, the Settlement provides significant non-monetary relief to the class as well. Specifically, in part as a result of the Litigation, Boar's Head made modifications to its practices and procedures regarding bacterial contamination, including increased employee training and more frequent inspections. These modifications significantly benefit consumers, including Settlement Class Members who wish to purchase Defendant's products in the future.

39. The Settlement Agreement mitigates risks and costs by providing an immediate and certain substantial monetary recovery and alleviates the risk of continued litigation.

40. While Plaintiffs believe in the viability of their claims, Defendant's anticipated defenses posed a significant risk that the case would be dismissed and Plaintiffs and the Settlement Class would receive nothing. The next steps in the litigation would have been resolution by the Court of Defendant's anticipated motion to dismiss, Plaintiffs' forthcoming motion for class

certification, and Defendant's forthcoming motion for summary judgment. At minimum, these efforts would be costly and time-consuming for the Parties and the Court, and create the risk that a litigation class would not be certified and/or that the Settlement Class Members would recover nothing at all.

41. Further, Defendant is represented by one of the best defense firms in the country, which is well-versed in class action litigation, and Defendant has indicated that it would continue to assert numerous defenses on the merits.

42. If litigation proceeds, Defendant's arguments could completely defeat, or significantly narrow, the scope of the Litigation, claims, and damages through, inter alia, successful dispositive motions or opposition to class certification.

43. In addition, if the litigation proceeded to trial, both sides would offer expert testimony on liability and damages.

44. Plaintiffs would undoubtedly face a challenge to their class-wide damages expert who would proffer a methodology for calculating aggregate class-wide economic injury. Such an expert undertaking is costly, and Plaintiff expects Defendant would challenge Plaintiffs' ability to calculate a price premium class wide.

45. Plaintiffs acknowledge the complexity in the resolution of whether advertising claims deceive reasonable consumers. A rigorous battle of the experts would include survey analyses and disputed damages analyses.

46. There is a substantial risk that a jury may accept Defendant's experts' testimony and damages arguments or award far less than the settlement amount or nothing at all.

47. While confident in their claims, Plaintiffs nonetheless face significant risks in establishing liability.

48. If litigation continues, Plaintiffs and Class Counsel are also aware that Defendant

would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial. And while Plaintiffs and Class Counsel were confident in the claims alleged, it is entirely possible that the Court could have sided with Defendant, leaving Plaintiffs and Class Members empty-handed.

49.     The outcome of these proceedings cannot be certain, and if the litigation proceeds to trial, it will be a lengthy and complex affair with appeals likely to follow.

50.     Even if Plaintiffs could have defeated a motion to dismiss, obtained a class certification order and proceeded to trial, victory before the trier of fact would have been uncertain. Such uncertainty, moreover, was compounded by the appeals virtually certain to have followed any verdict. In short, while Class Counsel believes that the claims are viable and strong, there can be no denying the array of serious class-wide risks, any one of which could have precluded the Class and its counsel from recovering anything at all.

51.     Consistent with Second Circuit jurisprudence, in settling the litigation, Plaintiff accounted for the estimated damages, the benefits and risks of continuing litigation against Defendant, and the range of possible outcomes should the litigation continue.

52.     The settlement also will provide an immediate and certain benefit to the Settlement Class and will avoid the substantial burdens and costs that continued and uncertain litigation would impose on the parties, non-party witnesses, and the courts. Furthermore, there are many steps between here and any potential verdict.

53.     Even assuming, *arguendo*, that continued litigation might result in a larger recovery than the settlement, it would occur only after the expenditure of hundreds of thousands of dollars in costs and expenses (at best) that would consume much of any increased recovery.

54.     Moreover, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in

accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order. Zero Class Members objected to the Settlement, and only three submitted valid opt outs.

55. By any standard, this Settlement constitutes a favorable result made possible by the dedication and skill of Class Counsel under very difficult circumstances.

56. In addition, Class Counsel are qualified, experienced, and able to conduct the Litigation. Class Counsel have invested considerable time and resources into the prosecution of the Litigation and possess a long and proven track record of the successful prosecution of class actions, including false advertising cases, and numerous appointments as class counsel

57. No other agreements between the Parties exist other than the Settlement Agreement.

58. Sultzer & Lipari's firm resume can be found at ECF Doc. 18-3.

59. Levin Sedran & Berman LLP's firm resume can be found at ECF Doc. 18-4.

60. Milberg Coleman Bryson Phillips Grossman, PLLC's firm resume can be found at ECF Doc. 18-5.

61. Poulin, Willey, Anastapoulo, LLC's firm resume can be found at ECF Doc. 18-6

62. Reese LLP's firm resume can be found at ECF Doc. 18-7

63. Leeds Brown Law P.C.'s firm resume can be found at ECF Doc. 18-8.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of August, 2025 in Poughkeepsie, New York.

/s/ Jason Sultzer
Jason Sultzer